FILED
2021 May-18  PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

ROBIN L. BREWER,                )
                                )
    Plaintiff,                  )
                                )
                                )   CIVIL ACTION NO.
v.                              )
                                )
                                )   _____
UNUM GROUP CORPORATION          )
f/k/a UNUM PROVIDENT            )
CORPORATION; and UNUM LIFE      )
INSURANCE COMPANY OF            )
AMERICA; and CVS CAREMARK       )
WELFARE BENEFIT PLAN,           )
                                )
    Defendants.

## COMPLAINT

Plaintiff Robin L. Brewer ("Plaintiff") brings this action for violations of the Employee Retirement Income Security Act of 1974 committed by Unum Group Corporation, f/k/a UnumProvident Corporation and Unum Life Insurance Company of America (collectively "Unum") relating to the provision of ERISA-governed disability benefits under the CVS Caremark Welfare Benefit Plan ("the Plan") sponsored by Plaintiff's former employer, CVS.  In support of the relief requested herein, Plaintiff alleges the following upon personal knowledge as to herself and as

1

to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys:

## INTRODUCTORY STATEMENT

1.      This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA").  This suit is brought pursuant to 29 U.S.C. § 1132(a), to secure disability benefits due to Plaintiff through an ERISA welfare benefits plan sponsored by CVS and insured through a group insurance policy issued by Unum insuring the Plan.

2.      The Plaintiff seeks any and all benefits to which she may be entitled should this Court determine she is "disabled" under the terms of the Plan. Such benefits include all other available long-term disability benefits; waiver of premium benefits under disability, life, accidental death and dismemberment or accident policies issued or administered by Unum; and any other benefits available through The Plan, including those managed, administered or underwritten by Unum.

3.      Plaintiff seeks benefits based on the conditions documented in her medical records and other information before Unum. Plaintiff's disabling conditions include cervical and lumbar degenerative disc disease, chronic back pain, osteoporosis, and COPD.

4.      Just as these conditions prevented Plaintiff from being able to perform the material and substantial duties of her occupation as a store manager at a CVS pharmacy for purposes of her short-term disability plan benefit administered by Unum, so to do these conditions prevent her from doing relevant to her long-term disability benefit. Specifically, Plaintiff is unable to engage safely in any physical activity that involves pushing, pulling, lifting, carrying, stooping, bending, standing, or walking to a level that would meet the requirements of her medium physical-demand occupation.

5.      Unum approved and paid Plaintiff's STD claim based on these issues and records, but when its potential liability increased as the claim transitioned to LTD, it abruptly reached a contrary determination that these issues and records suddenly did *not* meet its disability standard.

## JURISDICTION

6.      Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or an "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq. The Plan "may be found" within this district.

7.    Jurisdiction is further appropriate under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties.

8.    Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District, the breaches of duty alleged herein occurred in this District, and the Defendant may be found or reside in this District and, pursuant to 28 U.S.C. § 1391(b), in that the cause of action arose in this District.

## PARTIES

9.    As of the filing of this Complaint, Plaintiff Robin L. Brewer is a resident citizen of Alabama and this District.

10.    Defendant Unum Group Corporation is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

11.    Defendant Unum Group Corporation is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

12.    One of Unum Group Corporation's designated agents for service of process is:

> c/o Corporation Service Company, Inc.
> 641 South Lawrence Street
> Montgomery, AL 36104

13.     Unum Group Corporation is an entity exercising authority or control respecting the management or disposition of The Plan assets or the personnel exercising said authority over The Plan assets.

14.     Unum Group Corporation is an entity providing services to The Plan at issue.

15.     Unum Group Corporation is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

16.     Defendant Unum Life Insurance Company of America is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

17.     Unum Life Insurance Company of America is a "fiduciary" of The Plan as that term is defined by 29 U.S.C. § 1002(21).

18.     One of Unum Life Insurance Company of America's designated agents for service of process is:

> c/o Corporation Service Company, Inc.
> 641 South Lawrence Street
> Montgomery, AL 36104

19.     Unum Life Insurance Company of America is an entity exercising authority or control respecting the management or disposition of The Plan assets or the personnel exercising said authority over The Plan assets.

20.     Unum Life Insurance Company of America is an entity providing services to The Plan at issue.

5

21.     Unum Life Insurance Company of America is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

22.     Unum Life Insurance Company of America contracted with or presently has a contract for services with Defendant Unum Group Corporation, where Unum Group Corporation performs administrative functions for the Plan.

23.     Unum Life Insurance Company of America relies on employees provided through Unum Group Corporation for administrative functions for the Plan at issue.

24.     CVS Caremark Welfare Benefit Plan ("The Plan") is an "employee welfare benefit plan" as defined within 29 U.S.C. § 1001, et. seq., and may be served with process by serving: CT Corporation System, 155 South Main Street, Suite 301, Providence, RI 02903.

## THE PLAN

25.     Upon information and belief, The Plan at issue was funded, at least in part, by a long-term disability insurance policy sold by Unum Life Insurance Company of America, the company which also underwrote the policy.

26.     This long-term disability policy was purchased by Plaintiff's employer for the purpose of conferring a benefit upon Plaintiff and other employees.

6

27.    As a result, this policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Plaintiff qualifies as a participant and/or beneficiary under The Plan as that term is used in 29 U.S.C. § 1132.

28.    Under the terms of The Plan providing for disability benefits, Plaintiff is "disabled" as defined by The Plan.

29.    On information and belief, although the Plan purports to confer discretion to Unum Life Insurance Company of America, the employees that administered Plaintiff's claim either were employed by a different entity or acted under the direction or control of Unum Group Corporation pursuant to a general services agreement, notwithstanding them having presented themselves to Plaintiff as employees of Unum Life Insurance Company of America.

## UNUM'S LIABILITY

30.    Ms. Brewer suffers from cervical and lumbar degenerative disc disease, chronic back pain, COPD, and related anxiety.

31.    Although her pain history dates back to 2010, it was not until November 2016 that her pain first became significantly worse when Ms. Brewer injured her back while lifting a case of water. She was given a decadron shot at that time at Coosa Valley Medical Center and discharged. [Brewer 0812-0824.] An MRI the following month revealed the following:

7

```
FINDINGS:
There is a mild dextroscoliosis.
At T12-L1, there is minimal disc bulge.
At L1-2, there is minimal disc bulge.
At L2-3, there is mild disc bulge and minimal retrolisthesis.
At L3-4, there is minimal facet spondylosis.
At L4-5, there is mild disc bulge slightly asymmetric to the right and minimal
facet spondylosis. There is mild bilateral foraminal narrowing, left greater
right.
At L5-S1, there is minimal disc bulge asymmetric to the right and mild facet
spondylosis, without obvious canal or foraminal stenosis.

IMPRESSION:
Mild lumbar spondylosis.
```

32.     Brewer's back pain continued from that point forward.   On
March 12, 2017, she returned to CVMC complaining of "Severe, burning, sharp,
Constant" pain every few days exacerbated by physical activity, which at work in
her job as a CVS store manager was frequent with each workday spent stocking
shelves and managing store merchandise and inventory.

33.     Brewer continued to manage her pain while working for the next two
years, even though that pain grew steadily worse.

34.     The worsening of that pain caused her to return for treatment, this time
for pain management with Dr. Gordon, on April 26, 2019.  Dr. Gordon recorded the
encounter as follows:

> This is a 55-year-old female referred by Dr. Imad Khdair, with about a 9-year history of low back pain and she says recently her left lumbar region has been much more painful than the right. Occasionally, she notices she also has radiation to bilateral legs. The right on this instance is worse than the left. Her right leg is even, at times, hard to lift and feels heavy. She has MRI from 2019 that shows an L4-5 left annular tear and L2-3 with minimal retrolisthesis and facet disease. Epidural steroid block was discussed, along with the risks and benefits and she elected to proceed.

Brewer was given a steroid injection and discharged, a procedure that repeated itself over the next several months.

35.    When Brewer found herself unable to continue working at or around January 2020, she underwent another MRI. This MRI revealed continuing degeneration in her spine and progression of her degenerative disc disease. The results of that study were as follows:

```
FINDINGS:
No worrisome vertebral body lesion is seen. No cord lesion is seen. Regarding
individual disc spaces:
C1-2, C2-3, C3-4, C4-5: No significant abnormality. No significant spinal
stenosis.
C5-6: There is a mild disc bulge. There is no significant canal stenosis. There
is equivocal mild right foraminal narrowing.
C6-7: There is a mild disc bulge. There is no significant canal stenosis. There
is mild bilateral foraminal narrowing.
C7-T1: No significant abnormality. No significant spinal stenosis.
An approximately 7 millimeter right thyroid nodule is felt to be incidental.

IMPRESSION:
1. There are mild degenerative changes without significant canal stenosis.
2. There is equivocal mild right C5-6 and mild bilateral C6-7 foraminal
narrowing.
```

36.    Around this same time, Brewer applied for short term disability benefits under the Plan which insured that benefit through a group policy with Unum (basically the same arrangement alleged above for the Plan's LTD benefit).

37.    Unum reviewed and investigated this initial claim and found Brewer to satisfy the STD definition for disability.

9

38.    On April 16, 2020 (and during her STD period when Unum found her to be disabled from her occupation and entitled to a benefit), Brewer saw Dr. Aldaher who recorded her as continuing to suffer from pain in her neck and back during his examination.

39.    Brewer received another steroid injection 8 days later from Dr. Gordon.

40.    On May 18, 2020, Brewer returned to Dr. Aldaher and again back and neck pain were noted on his examination report.    Brewer reported lung issues previously, so he also noted the need for follow-up for lung function testing. At that time, however, she denied having any shortness of breath.

41.    The next month, Brewer's problems with her wrist also became more defined.    A June 19, 2020 MRI resulted in a finding that there was an "Increased T2 signal within the substance of the TFCC," with no other significant abnormalities found at that time. This was different from an earlier MRI that year where no abnormalities had been found.

42.    Meanwhile, Brewer returned to Dr. Aldaher complaining not only of spinal pain, but also difficulty breathing at times.  Dr. Aldaher assessed her as having COPD at that time.  [Ms. Brewer has continued treating since for pain and has received more steroid injections.

43.    Unum eventually approved Brewer's STD claim in its entirety, finding her to satisfy this definition through the end of the STD term on or about July 9,

2020.

44.    When Brewer's claim transitioned to LTD, which had a longer payment horizon, Unum's treatment toward Brewer's claim became noticeably more adversarial.

45.    Following an investigation of basically the same medical records, information and assessments from treating physicians, Unum this time reached a contrary decision.

46.    In a letter dated August 28, 2020, Unum informed through its LTD claims team assigned to Brewer's benefit that it was denying and closing Brewer's claim because Unum's "on-site physician" opined based only on a review of records (and not on an actual examination) that Brewer's conditions impacting her spine, among other things, did not "limit" her "from performing the material and substantial duties of [her] regular occupation ...."

47.    After classifying Brewer as having worked in a medium physical-demand occupation as a Store Manager for CVS involving the occasional need to exert up to 50 pounds of force and the frequent need to be able to exert up to 25 pounds of force, with frequent walking and standing, among other things, Unum's OSP found Brewer to be able to fulfil these and other job requirements on a regular fulltime basis.

48.    Central to this conclusion was the OSP's flat-out disagreement that

11

Brewer's conditions – which he expressly did not doubt – were as limiting as Brewer's primary treating physician Dr. Aldaher had expressed since her disability began in January 2020. Unum's DMO agreed. This opinion then led to the denial and closure of Brewer's application for LTD plan benefits, a result that is directly at odds with the disability finding made by their predecessor claims team for Brewer's STD claim that was paid in full.

49.    Brewer's records during her STD period and up through her LTD denial show a consistency, if not a slight worsening, of Brewer's condition between January 2020 and the date of her LTD denial. Over that time, the assessments from Dr. Aldaher remained entirely consistent and utterly without change, which was enough for Brewer's STD, but somehow were not enough for her LTD despite the similarity in disability standards.

50.    Brewer thereafter retained counsel to assist her with her appeal. Counsel, on Brewer's behalf issued a request dated November 20, 2020 for a complete copy of all "relevant" information relating to this August 28, 2020 adverse determination pursuant to 29 C.F.R. § 2560.503-a(h)(2)(iii).

51.    Plaintiff did not receive a production responsive to the foregoing request until January 12, 2020.

52.    The response included what Unum identified as being Brewer's LTD claim file; however, upon review of that file, all records relating to Brewer's STD

claim that had also been part of Unum's claim administration and therefore also part of her LTD claim record were missing.

53.    Unum also outwardly indicated that it had withheld documents involving attorney activity in the administration of the claim.

54.    After ascertaining the absence of STD records in the claim file, Counsel returned a copy of what had been received with Bates numbers affixed and noted the STD records had not been received as part of that production.  Counsel noted the apparent importance of the STD records since that claim had been paid in full, and the LTD claim had been totally refused at the same time.

55.    Two days later, on February 19, 2021, Brewer, through Counsel, lodged her appeal from the denial of her LTD benefit via facsimile and U.S. certified mail, while at the same time noting that the STD record was missing and that its absence prevented a full presentation.

56.    Around two weeks later, Counsel received from Unum its production of what it identified as being Brewer's STD claim file. However, as with the LTD file, certain documents were expressly withheld notwithstanding their clear relevance to Brewer's claim administration.

57.    At about that same time, on March 4, 2021, Brewer, through counsel, provided Unum with a Functional Capacity Examination ("FCE") report from an examination that took place on February 22, 2021.  This FCE report showed Brewer

13

to be plainly incapable of engaging in any fulltime work having a medium physical demand requirement. Indeed, the report revealed Brewer was not even able to work in a sedentary capacity fulltime – an assessment that entirely consistent with those provided by Dr. Aldaher leading up to Unum's denial of Brewer's LTD claim.

58.     On March 18, 2021, Counsel returned the STD file to Unum after affixing Bates numbers again to confirm what Counsel had received.  Additional argument was presented for Brewer's appeal given the materially identical information and plan terms for Unum's STD and LTD reviews.  Counsel also expressly informed Unum that it could consider Brewer's appeal as being complete as of that date (March 18) and that Unum's 45-day period for deciding the claim under Plan terms and Department of Labor regulations was considered as having commenced starting on that date.

59.     Unum received Counsel's March 18, 2021 letter on the same date it was sent via facsimile.  This is confirmed by a facsimile transmission report.

60.     An additional copy of the letter which included the Bates-numbered STD claim record was sent via U.S. mail.

61.     In a letter dated March 19th, Unum confirmed the completion of the appeal on the day before and informed,  "We are committed to making an appeal decision within 45 days of receiving your client's written appeal."

62.     The 45th day from Unum's receipt of Brewer's March 18th completion

14

of her appeal was May 2, 2021.

63.    In a letter dated April 16, 2021 -- 29 days after the appeal was underway -- Unum informed that Brewer's file "is currently being reviewed by our medical consultant…." It then promised that Unum would be in contact with Counsel when that review was completed.

64.    On or about April 28, 2021, Unum's appeals specialist called to request an extension of time in which to reach a decision on the appeal.  At the time, there were no circumstances cited for the request other than a need for additional time to complete the review.  Counsel, on behalf of Brewer, agreed to permit Unum an additional 14 days -- or through and until May 16, 2021 -- to issue a written decision as follows, noting that while Brewer could accommodate Unum's request to a consensual extension to a point, she could not agree to one beyond 14 days unless Unum could identify the existence of "special circumstances" that justified additional time pursuant to Plan terms and Department of Labor regulations:

> As a gesture of good will, Ms. Brewer is agreeable to allowing UNUM to have the benefit of an additional 14 days from today's date to issue a written decision. Ms. Brewer amenable to allowing more time under Department of Labor Regulations and Plan terms, provided that we are first able to consider UNUM's reasons for an extension. Thus far, we are not sure what those are, other than a pursuit of a medical review, which is not a truly special or exceptional circumstance. If you could provide us with reasons why UNUM needs additional time, I will discuss those with Ms. Brewer. Because time remains of the essence where her claim is concerned, we must ensure that regulations and plan terms governing the timeline for issuing a decision (extensions included) are strictly applied according to their spirit and intent and Ms. Brewer's longstanding expectations.

65.    On April 30, 2021, Unum sent a letter that included the review it had

been working on for at least two weeks when one considers its April 16 correspondence above. This letter invited Brewer's reply to the medical review included therein by no later than May 14.

66.     Unum also acknowledged Counsel's earlier agreement to a 14 day extension at the same time it informed that it now intended to take a "45 day extension by right." The only reason identified by Unum for taking this extension was as follows: "We need this extension to provide you with an opportunity to review and respond to the enclosed information and to allow us time to review any relevant information you submit."

67.     Unum then informed that this additional 45 day extension would begin on either the date Brewer responded to the medical review or May 14, whichever came first.

68.     On May 5, 2021, Counsel noted Unum's employment of deceptive tactics to stretch out its time for deciding Brewer's claim in a letter to Unum noting that Unum's only given reason for needing more time was because it had failed to conduct a medical review – which is necessary in almost every LTD claim – in a timely manner.

69.     Counsel also informed Unum that Brewer was unable to consent to any extension of time beyond the original 14 days she had given because the urgency of her financial situation demanded that Unum comply with its obligations for timely

decision making.

70.     In recognition of Unum's request for a response to its new information,

Counsel promised that reply would be timely provided to allow Unum sufficient

time to review the reply for its final decision to be issued by May 16th.

71.     Two days later on May 7th, Brewer, through counsel, provided that

reply, thus leaving Unum with nine days to render a timely decision.  Counsel again

reiterated in that letter the need for a timely decision.

72.     As of the date of the filing of this Complaint, no such written decision

has been received; accordingly, Brewer is now deemed to have exhausted her

administrative remedies under Department of Labor regulations and Plan terms.

73.     Although there remain questions about the completeness of the

materials Unum has produced in this case at various times, those materials known

thus far to Brewer establish numerous breaches and errors committed by Unum

while administering Plaintiff's claim, including:

> (a)     The targeting of Plaintiff's claim for denial because ERISA
> governs;

> (b)     The failure by Unum to take any meaningful measures to insulate
> its claims process from its inherent conflict under the Supreme
> Court case *Glenn v. MetLife* and instead allowing its profit
> motive to influence its claims administration for Plaintiff;

(c)     The withholding of relevant documents and information from Plaintiff throughout the claims process and depriving Plaintiff of the ability to obtain a full and fair review of his claim;

(d)     Taking an adversarial posture against Plaintiff instead of a fiduciary posture by searching for ways to avoid paying part or all of his claim;

(e)     Failing to conduct an adequate investigation, and not considering and/or according proper weight to relevant, supportive information;

(f)     Failing to accord any weight to Plaintiff's medical providers who personally examined the Plaintiff on a regular basis, and instead relying only on nurse reviewers who are unqualified to overrule such physicians;

(g)     Failing to adhere to the terms of the Plan and Department of Labor regulations, such as those governing the review of adverse benefit determinations, when a decision must be made;

(h)     Purposefully limiting and curtailing the review of its medical consultants and otherwise improperly exerting influence on them to opine against payment of benefits;

18

(i)     Unreasonably and arbitrarily overruling the professionals who personally examined Plaintiff;

(j)     Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how her conditions impacted one another; and

(k)     Unreasonably and arbitrarily overruling *its own* prior determinations that Plaintiff was permanently disabled without there being medical evidence of substantial medical improvement in Plaintiff's conditions.

74.     As set forth above regarding Unum's fiduciary breaches, Unum's claim decision was the product of a conflict of interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Plaintiff.

75.     Employees who were responsible for the administration of Plaintiff's claim for benefits are eligible to receive bonuses and awards based at least in part on company profitability.

76.     Further, employees who had supervisory involvement and authority over Plaintiff's claims process participate in Unum Group Corporation's management incentive compensation program.

77.     Employees involved in the administration of Plaintiff's claim also participate in Unum Group Corporation's performance recognition program.

78.   To receive bonuses or awards under either the management incentive program or the performance recognition program, Unum Group employees must meet certain criteria.

79.   Satisfaction of the eligibility criteria for these programs is impacted at least in part by the denial and/or closure of claims like Plaintiff's.

80.   Unum's history of abusive claims practices reaches back for many years and includes documented policies of instructing, encouraging or incentivizing employees responsible for claims administration to deny claims, especially when that claim is found likely to be subject to ERISA.

81.   This strategy finds its inception in what has become known as the LeBeouf Report.

82.   The LeBeouf Report and internal documents relating to the same established a strategic approach that included an "ERISA Task Force" created by Unum for the implementation of standardized claims practices that encouraged employees to consider the applicability of ERISA during the administrative process and then to target such claims for potential denial to "take advantage of ERISA protection."

83.   In an October 2, 1995 memorandum, Unum management-level employee Jeff McCall assessed the opportunities afforded by ERISA's application to aggressive handling of claims as follows:

The advantages of ERISA coverage in litigious situations are enormous; state law is preempted by federal law, there are no jury trials, there are no compensatory or punitive damages, relief is usually limited to the amount of the benefit in question, and claims administrators may receive a deferential standard of review. The economic impact on Provident from having policies covered by ERISA could be significant. As an example, Glenn Felton identified 12 claim situations where we settled for $7.8 million in the aggregate. If these 12 cases had been covered by ERISA, our liability would have been between zero and $0.5 million.

The key for determining the applicability of ERISA is whether or not the employer "sponsors" or "endorses" the plan. If the employer pays the premium, the policy would usually, but not always, be considered to be governed by ERISA. Salary allotment or payroll deduction arrangements, by themselves, do not necessarily mean that a policy is subject to ERISA. While our objective is to pay all valid claims and deny invalid claims, there are gray areas, and ERISA applicability may influence our course of action.

Memorandum of Jeff McCall (a copy of the foregoing memorandum is included in Plaintiff's ERISA administrative record).

84. Between 2002 and 2004, Unum was subjected to investigation by several state departments of insurance. The announced purpose of that investigation was "to determine if the disability income claims handling practices of [Unum] reflected systemic 'unfair claim settlement practices'" in violation of various state insurance laws.

85. Upon completion of the investigation, examiners found many abuses, including unfair construction of evidence and evidentiary or contractual requirements for proving entitlement to benefits. (A copy of the foregoing document

is included in Plaintiff's ERISA administrative record).

86. After completion of this multi-state investigation in November 2004, Unum entered into a Regulatory Settlement Agreement ("RSA") whose terms required it to pay a substantial fine and to amend its claims practices.

87. Unum, however, did not faithfully comply with the terms of the agreement, and instead engaged in an effort to better camouflage its pre-RSA claims practices.

88. Not long after its execution of the RSA, Unum instructed its employees to continue to decide claims as they had done previously, notwithstanding Unum's forthcoming revision of its claims procedures to satisfy any future inspectors.

89. As part of this resumption of its pre-RSA activities, Unum continued its incentivization programs aimed at closing claims and obtaining "recoveries" for Unum in the form of released reserves.

90. Unum employees at the claim administration level continued to take part in a company bonus system and award program tied to company profitability.

91. Unum employees at the claims level also continued to be evaluated on a regular basis for their efforts to achieve goals connected to the enhancement of corporate profits.

92.     As set forth above, to receive bonuses or awards under either the management incentive program or the performance recognition program, Unum Group employees must meet certain criteria.

93.     Satisfaction of the eligibility criteria for these programs is impacted at least in part by the denial and/or closure of claims like Plaintiff's.

94.     Unum's "Manager Toolkit" shows metrics included within these criteria involve claim closure or termination numbers, liability acceptance rates, and claim reopen rates.

95.     These values, individually or in the aggregate, may influence the award of performance compensation or consideration of corporate advancement opportunities.

96.     Unum even explicitly directs its management employees to filter information to those reporting to them so their interests likewise justify with those of the overall company.

97.     As Unum's documents make clear, the more an individual or unit is perceived as contributing to the meeting of Unum's financial goals, the greater their share of the bonus pool.

98.     Unum also actively tracks the pursuit of goals for closing claims or recovering or conserving reserves on a regular basis and consistent basis through Weekly Tracking Sheets.

99.    According to Unum's claims procedures pertaining to IDI milestone reviews, these goal documents are made available to the claim directors, the very individuals charged with deciding whether claims will be approved or denied and whether open claims will be terminated.

100.    Unum also uses a "balanced business scorecard" approach at the director level to ensure claims personnel remain informed throughout the year on whether the company is meeting the financial goals necessary for the availability of bonus or incentive compensation.

101.    These scorecards are among those documents evidencing the continuation of Unum's earlier pre-RSA claims practices; other Unum documents have also specifically referenced goals, expectations, projections and targets for closures.

102.    This active conflict of interest under which Unum employees operate further calls into question the credibility of Unum's claims personnel and reviewers, such that no deference to the decision made here should be accorded.

103.    Unum considered the applicability of ERISA before making its decision.  This presents an additional reason for application of a *de novo* standard to their claim decision, and to excuse the Plaintiff from further utilization of Unum's claim process.

104.   Unum did not provide Plaintiff with a meaningful opportunity for a full and fair review of her claim for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

105.   Unum's decision process has not comported with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations.

106.   Plaintiff has exhausted all Plan remedies even though Unum's failure to adhere to Plan terms or ERISA requirements and regulations did not require it. As such, this case is ripe for judicial review.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Robin L. Brewer respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant the following relief:

    a.   For an order awarding Plaintiff all benefits due and owing in accordance with the terms of the Plans and Policies identified in this Complaint, as well as all prejudgment interest due thereon as permitted by law and equitable principles, pursuant to 29 U.S.C. § 1132(a);

    b.   For a judgment against Unum and the Plan awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1);

c.    For an order requiring Unum and the Plan to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under The Plan(s); and

d.    Such other relief as may be deemed just and proper.

Respectfully submitted,

M. Clayborn Williams
(ASB-9101-A43M)

**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402-0087
Phone (205) 343-1771
Facsimile (205) 343-1781
clay@erisacase.com

**Plaintiff's Address:**

Robin Brewer
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendants' Address:**

Unum Life Insurance Company of America
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

Unum Group Corporation
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

CVS Caremark Welfare Benefit Plan
CT Corporation System
155 South Main Street, Suite 301
Providence, RI 02903.

**REQUEST FOR SERVICE BY**
**CERTIFIED MAIL**

Please serve the defendants Unum Life Insurance Company of America, Unum Group Corporation and CVS Caremark Welfare Benefit Plan by certified mail pursuant of Federal Rules of Civil Procedure 4(e)(1).

M. Clayborn Williams